UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation | Court File No. 11-MD-2247 ADM/JJK |
| This Document Relates to:<br><br>All Actions | |

**Objection of Paul Palmer and Jeffrey Palmer to Settlement and Notice of Intent to Appear**

Objectors and class members Jeffrey Palmer and Paul Palmer to lodge their objections and submit their notice of intention to appear at the final fairness hearing in *In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation*. Both objector class members owned RTI Plumb-PEX Plumbing Systems, containing ASTM standard F1807 brass insert fittings and stainless steel clamps which leaked and caused damage to their property during the class period (hereinafter, the "systems"). Objectors submit a photograph of these systems as **Exhibit A** in support of this objection.

Paul Palmer and Jeffrey Palmer's address is in Nacona, Texas.

In support of their objections, Objectors state as follows:

### I. SUMMARY OF OBJECTIONS

For the following reasons, Objectors state that the Settlement Agreement is not fair, reasonable or adequate.

1. The attorneys' fee request cannot be analyzed at this time because the benefit to the class is unknown;

2. There is no disclosure of class counsels' lodestar, such that a finding of reasonableness of the request is premature;

3. The proposed notice is flawed and a violation of class member's due process rights;

4. The requirements to submit a claim are onerous such that it may preclude many class members from participating in this settlement; AND

5. The earliest possibility to make a claim is in December 2013; nearly 1.5 years after the final fairness hearing will occur and class counsel awarded their fee.

## II.   THE COURT MUST ACT AS FIDUCIARY OF THE CLASS

The court has a "duty under Rule 23 of the Federal Rules of Civil Procedure to protect absent class members and to police class action proceedings." *Strong v. BellSouth Telecommunications*, Inc., 137 F.3d 844, 849 (5th Cir. 1998). The duty requires a review of substantive claims included in the agreement and an investigation into the manner in which fees of class counsel are to be paid and the dollar amount for such services. *Id.* Rule 23(e) of the Federal Rules of Civil Procedure provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." A settlement may only be approved after the court finds it is fundamentally fair, adequate and reasonable. Id.

This heightened scrutiny extends to the award of fees in class action settlements. The 2003 Committee Notes to Rule 23(h) state that "[a]ctive judicial involvement in measuring fee awards is singularly important...[i]n a class action, the district court must ensure that the amount

and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility." Committee Notes to Rule 23(h), 2003.

### III. THIS CLAIMS-MADE SETTLEMENT VALUE IS NEBULOUS AND THE REQUIREMENTS TO PROVE CLASS MEMBERSHIP ENSURE THE CLAIMS RATE WILL BE LOW

The settlement provides relief, in brief overview, in the following way. If a Class Member can provide proof of ownership of one of the systems produced by Defendant, either by turning in the item itself, showing proof of purchase or by picture, then he is eligible for reimbursement for the replacement or repair of the part. (See Settlement Agmt, ¶ 90, 99, 100.) In other words, this is a claims-made settlement because there is no common fund from which these awards will be deducted. Rather, Defendant only pays as many valid claims as are made.

There are several components which work in Defendant's favor to ensure the claims are low. First, the class period runs from 1999 to present which means that few individuals will either still have the proof of purchase or have retained a damaged part. Second, the claims period does not commence until December 2013 so class members that did retain proof now have to put this evidence somewhere safe such that they can send it in one and one half years. Further crippling the value of this settlement is the option that a class member can simply send the system to Defendants as proof of purchase. This system is an integral part of piping which carries water. One cannot simply remove the part without also replacing it. At that point, few if any class members will feel so inclined to waste the postage on participating in this lawsuit after the damaged part has already been replaced. For the foregoing reasons, common sense dictates that the claims that will actually be made in this matter will be few.

The potential for abuse of the class action vehicle is most pronounced in cases involving claims-made settlements. First, only a fraction of any given class is likely to claim the benefits provided for in a settlement. Indeed, "[i]t is not unusual for only 10 or 15% of the class members to bother filing claims," and "[w]hen settlements require class members to file statements or proofs of claim in order to receive their share . . . 'response rates are often very small, and rarely exceed 50%'." Christopher R. Leslie, The Significance of Silence: Collective Action Problems and Class Action Settlements, 59 FLA. L. REV. 71, 119-20 (2007) (quoting *Petruzzi's Inc. v. Darling-Delaware Co.*, 983 F. Supp. 595, 605 (M.D. Pa. 1996)); See also *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005) ("'[C]laims made' settlements regularly yield response rates of 10 percent or less.").

This settlement is more of a windfall for the Defendants than for the Class. Defendants escape a tremendous liability and damage threat by paying only attorneys' fees to class counsel and what can only be assumed will be *de minimis* awards to the class. Thus, the minimal and, as yet undefined, value of the recovery to the Class and the significant worth of this settlement to the Defendants should be considered in this Court's final approval of the settlement.

## IV. THE ATTORNEY'S FEE AWARD IS PREMATURE AND APPEARS UNFAIR AND EXCESSIVE ON ITS FACE

The Eighth Circuit may choose between two alternate approaches to analyze requests for attorneys' fees in Class Actions. *In re Bank America Corp. Securities Litigation*, 228 F.Supp.2d 1061, 1064 (E.D.Mo.2002). The first approach, the lodestar method, is calculated by multiplying the attorney hours expended by a reasonable hourly rate. *Id.*, 228 F.Supp.2d at 1064, citing *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 244 (8th Cir.1996). Alternatively, the Court may employ a "percentage of recovery" approach in which the prevailing party is awarded

"a percentage of the common fund that the attorneys obtained for their clients during the course of the litigation." *Id.*

## A. The Fee Award Should be Based on the Total Claims Made Since there is No Common Fund.

In this case, the value of the total reward to the Class can only be calculated by a determination of the total claims made by the Class Members. *See e.g., In re Compact Disc Minimum Advertised Price Litig.*, 370 F.Supp.2d 320 (D. Me. 2005)(awarding attorneys' fees of 3% of value of redeemed coupons which was 30% of claimed lodestar). *See also, In re Excess Value Ins. Coverage Litig.*, 2005 U.S. Dist. LEXIS 45104 (SDNY 2006) at *28-33 (awarding class counsel fees in the amount of 50% of vouchers redeemed, which was 35% of lodestar).

> Recognizing that percentage of funds is the preferred method of assessing fees in a settlement like this, with lodestar analysis providing only a check, I can effectively gauge appropriate attorney fees only if I know the total value of the settlement. But although I am satisfied that the coupon settlement has value to the class, I am not confident of the redemption rate that has been projected and thus of the settlement's total value. Therefore, I have determined to delay award of attorney fees until experience shows how many vouchers are exercised and thus how valuable the settlement really is.
>
> *In re Compact disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp.2d 184 189-190 (D. Me. 2003)(Hornby, D.J.).[1]
> The percentage of Settlement approach cannot be reasonably employed at this point because the Settlement's actual value to the Class is unclear and cannot accurately be assessed until the rate at which Class Members redeem ... is known ...

---

[1] See, for example, in *Ohio Pub. Interest Campaign v. Fisher Foods, Inc.*, 546 F.Supp. 1, 5 (N.D.Ohio 1982), the court approved a class action settlement involving the use of "Food Purchase Certificates." However, "[r]ecognizing the likelihood that many Food Certificates [would] not be used by their recipients," the settlement further provided that the defendants would make payments of food or cash to charitable organizations "to the extent that Certificates [were] not redeemed in any given year." *Id.* In *Langford v. Bombay Palace Restaurants, Inc.*, No. 88 Civ. 5279, 1991 WL 61107, at *1 (S.D.N.Y. April 8, 1991), and *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F.Supp. 1379, 1382 (D.Md.1983), the coupons issued as part of the settlements were redeemable for product discounts or, alternatively, for a lesser amount of cash. In other cases, scrip is used in class action settlements in conjunction with cash payments. See, e.g., *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 305 (N.D.Ga.1993); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, No. MDL 150, 1993 WL 39306, at *2 (C.D.Cal. Jan. 12, 1993); *New York v. Nintendo of Am., Inc.*, 775 F.Supp. 676, 679 (S.D.N.Y.1991).

*In re Excess value Ins. Coverage Litig.*, 2004 2004 WL 1724980 (S.D.N.Y.,2004.) at *16.

The case of *Yeagley v. Wells Fargo & Co.*, 2008 WL 171083. (N.D.Cal. 2008), is likewise applicable to the situation before this Court. In *Yeagley*, the court confronted the task of evaluating a coupon settlement for the purpose of awarding attorney fees:

> To award class counsel the same fee regardless of the claim participation rate, that is, regardless of the enthusiasm of the class for the benefits purportedly negotiated on their behalf, would reduce the incentive in future cases for class counsel to create a settlement which actually addresses the needs of the class. In this case, for example, the one percent claim rate demonstrates that the brochure did not effectively educate the claim members about the importance of credit reports and monitoring their credit ... Common sense dictates that a reasonable fee in a class action settlement is a fee that takes into account the actual results obtained... *Id.* at *9.

## B. The Attorney's Fee Award Will Be Granted to Class Counsel Over One Year Prior to the Commencement of the Claims Period.

Further adding to the specter of unfairness is the timeline associated with this settlement. According to the settlement documents, class counsel will be paid their fee award within ten (10) days of the final approval of counsels' request while class members must wait until December 2013 to even make a claim. (Stlmt Agmt., ¶ 86.) This hardly seems either fair or reasonable as there is no rational explanation why the class members must wait such a significant length of time to make their claim other than to discourage participation.

## C. There is No Lodestar Disclosure to Guide the Court in Its Analysis of the Fee Request.

In conjunction with the host of other problems presented infra, class counsel has yet to inform either the class or the Court regarding its total lodestar amount. The lodestar is an important factor in a Court's determination of fairness and adequacy of award. *In re Bank America* 228 F.Supp.2d at 1064. Here, no lodestar has been provided and it is not clear when or if it will.

As noted above, the lodestar amount is absolutely critical in assessing attorney's fees in a claims-made settlement such as this one. See *Strong v. Bellsouth*, 137 F.3d at 852-53. In calculating reasonable attorney's fees, the district court is to consider several factors in determining the lodestar amount (the reasonable number of hours worked multiplied by the market rate), and in considering adjustments to the total fee award. See *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983); *Zoll v. Eastern Allamakee Community Sch. Dist.*, 588 F.2d 246, 252 & n.11 (8th Cir. 1978); see *Allen v. Amalgamated Transit Union, Local 788*, 554 F.2d 876, 884 (8th Cir.). The Eighth Circuit has confirmed that a downward adjustment of the lodestar amount is appropriate based on the limited success of a settlement. *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (district court's 50% reduction in lodestar based on limited results obtained). Accordingly, these Objectors request the district court consider this possibility when and if the lodestar amount is disclosed for the poor settlement attained here.

## V. THE NOTICE IS DEFICIENT AND VIOLATES CLASS MEMBERS' DUE PROCESS RIGHTS

Rule 23(c)(B) requires that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Although the settlement agreement purports to provide individual notice, it is not clear for how many class members Defendant has contact information such that the notice will reach those persons by U.S. Mail. (Stlmt Agmt, ¶ 56-59.) The settlement agreement then suggests that, in the instance personal service fails, notice by "press release" will be used. *Id.* This notice plan is destined to fail and is contrary to the Rules.

Specifically, Rule 23(c)(2) obligates the court to order the class representatives of a Rule 23(b)(3) action to mail individual notice to the last known address of those class members who

can be identified with reasonable effort. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-77, 94 S.Ct. 2140, 2150-52 (1974). "Reasonable effort" requires that:

> [O]nce a 23(b)(3) action has been certified, the name and last known address of each class member known to the parties or capable of being identified from business or public records available to them must be produced. The sources or sources providing the greatest number of names and addresses must be used. Obviously, the word "reasonable" cannot be ignored. In every case, reasonableness is a function of anticipated results, costs, and amount involved. A burdensome search through records that may prove not to contain any of the information sought clearly should not be required. On the other hand, a search, even though calculated to reveal partial information or identification, may be omitted only if its cost will exceed the anticipated benefits.

*In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1098 (5th Cir. 1977).

In this case, the settlement agreement states Defendant will use warranty information to obtain address information for class members. Defendant will then send by U.S. Mail the notice of class action settlement. This plan to use warranty information has two major flaws: it is unlikely that, (a) the class member ever sent in warranty information or (b) the warrantied individual still resides at that address, as the class period is so lengthy. That issue aside, Defendant purports it will use "reasonable efforts" to locate additional contact information. But the settlement agreement does not disclose what these reasonable efforts are or how effective they may be.

This means that most class members will likely not be contacted by individual notice, as the Rules require. The parties' back-up plan is to utilize a "press release" to notify class members of their rights. However, this plan is contrary to the Federal Rules. Where class members cannot be identified through reasonable efforts, Rule 23(c)(2) requires the "best notice practicable under the circumstances." *Eisen*, 417 U.S. at 173-77, 94 S.Ct. at 2150-52. It is commonly known that the "best notice practicable" is via the published media, not a press

8

release. *See* 7A C. Wright & A. Miller, *Federal Practice & Procedure*, § 1786, at 206 (1972); *Gordon v. Huret*, 117 F.R.D. 58, 63 (S.D.N.Y. 1987)("combination of mailed notice to all class members who can be identified by reasonable effort and published notice to all others is the long-accepted norm in large class actions.")

Therefore, these Objectors request that, in the instance notice cannot be disseminated to all class members by U.S. mail, it be published in well-read periodicals. These Objectors recommend the parties post the settlement notice on the webpages and newsletters of purveyors of similar products, such as Home Depot and Lowe's. This will make it infinitely more likely that at least some class members will be notified of this settlement. Certainly, press releases are both impermissible according to case law and the Rules and certain not to reach many class members.

## VI.   ADOPTION AND JOINDER OF ALL OTHER OBJECTIONS

These Objectors join in and adopt all well-taken, good-faith objections filed by other Class Members in this case and incorporate them by reference as if they appeared in full herein.

## VII.   CONCLUSION

For the foregoing reasons and all others presented at oral argument, Objectors respectfully request that this Court:

A. Upon proper hearing, sustain these Objections;

B. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement; and

C. Award an incentive fee to these Objectors for their service as named representatives of Class Members in this litigation.

Dated: June 1, 2012

Respectfully submitted,

By: *[signature]*
Paul Palmer

By: *[signature]*
Jeffrey Palmer

Paul Palmer
Jeffrey Palmer
301 7th Street
Nocona, TX 76255

# EXHIBIT A